GEORGE S. CARDONA
United States Attorney
WAYNE R. GROSS
Assistant United States Attorney
Chief, Southern Division
TERRI K. FLYNN (204932)
Assistant United States Attorney
Ronald Reagan Federal Building
411 West Fourth Street, Suite 8000
Santa Ana, California
Telephone: (714) 338-3592
Facsimile: (714) 338-3561
Email: Terri.K.Flynn@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) SA CR No. 06-247-DOC |
| Plaintiff, | ) <u>PLEA AGREEMENT FOR DEFENDANT</u> <u>JUAN VERDIN</u> |
| v. | ) |
| JUAN VERDIN, aka "Weasel," | ) |
| Defendant. | ) |

1.   This constitutes the plea agreement between JUAN VERDIN ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

## PLEA

2.   Defendant agrees to plead guilty to count one of the indictment in <u>United States v. Juan Verdin</u>, SA CR No. 06-247-DOC.

## NATURE OF THE OFFENSE

3. In order for defendant to be guilty of count one, which charges a violation of Title 21, United States Code, Sections 841(a)(1) and 846, the following must be true: (1) Beginning on or about a date unknown, but since at least January 2006, and continuing to on or about November 2, 2006, there was an agreement between two or more persons to commit the crime of possession with intent to distribute and distribute cocaine base; and (2) the defendant became a member of the conspiracy knowing of its object to possess with intent to distribute and distribute cocaine base and intending to help accomplish that object.

The crime of possession with intent to distribute is committed when (1) the defendant knowingly possesses cocaine base; and (2) the defendant possesses cocaine base with the intent to deliver it to another person.

Defendant admits that defendant is, in fact, guilty of this offense as described in count one of the indictment.

Moreover, in order for defendant to be subject to the statutory maximum and statutory minimum sentence set forth below, the government must prove beyond a reasonable doubt that defendant conspired to distribute at least 50 grams of a mixture or substance containing a detectable amount of cocaine base. Defendant admits that defendant, in fact, conspired to distribute at least 50 grams of a mixture or substance containing a detectable amount of cocaine base as described in count one of the indictment.

PENALTIES

4.   The statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Sections 841(a)(1) and 846 is: life imprisonment; a 5-year period of supervised release; a fine of $4,000,000; and a mandatory special assessment of $100.00.  The statutory mandatory minimum sentence that the Court must impose for a violation of Title 21, United States Code, Sections 846 and 841(a)(1), is 10 years imprisonment.

5.   Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6.   Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

7.   Under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act and will not be eligible for federal food stamp program benefits; furthermore, any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

8. Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

9. Defendant and the USAO agree and stipulate to the statement of facts provided below. This statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the sentencing guideline factors set forth in paragraph 13 below. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

> From as early as January 2006 to November 2, 2006, defendant conspired with co-defendants Adrian Nava, aka "Drifter," Jesus Vasquez, Sr., aka "Chuy," Maria Lagunas Calderon, aka "Dona Mari," and others to distribute and possess with intent to distribute cocaine base in the Townsend Street gang area of Santa Ana, California. Specifically, the Townsend Street gang has an area they consider their neighborhood or "turf" which is located in the Southcoast District of the City of Santa Ana, California. This area/turf is bordered by Willits Street on the north, Center Street on the west, McFadden Street to the south and Faitt Street to the east. Defendant admits that he was a Townsend Street member and a supervisor/ manager of the gang.
>
> Defendant admits that the conspiracy generally worked as follows: defendant and Nava would obtain cocaine base from other co-conspirators, including Vasquez and Calderon. Defendant and Nava would then distribute or arrange to distribute the cocaine base to other Townsend Street members. These other Townsend Street members would sell the cocaine base in the Townsend Street territory and deliver the proceeds of the cocaine base sales to defendant, Nava, and others.

In facilitating the cocaine base sales, defendant admits that he had telephone conversations with Nava, Vasquez and others, in which he discussed and supervised the sales of cocaine base. Below are examples of some of the telephone calls defendant engaged in as part of his conspiracy to distribute and possess with intent to distribute cocaine base.

Defendant admits that on August 15, 2006, defendant had a telephone conversation with a co-conspirator in which they discussed the sale and distribution of two sixteenths of an ounce (approximately 3.54 grams) of cocaine base.

Defendant admits that on August 22, 2006, defendant had a telephone conversation with a co-conspirator in which they discussed the sale and distribution of one sixteenth of an ounce (approximately 1.77 grams) of cocaine base.

Defendant admits that on September 3, 2006, defendant had a telephone conversation with a co-conspirator in which they discussed the sale and distribution of two sixteenths of an ounce (approximately 3.54 grams) of cocaine base.

Defendant admits that on September 3, 2006, defendant had an additional telephone conversation with a co-conspirator in which they discussed the sale and distribution of two sixteenths of an ounce (approximately 3.54 grams) of cocaine base.

Defendant admits that on September 6, 2006, defendant had a telephone conversation with a co-conspirator in which they discussed the sale and distribution of three sixteenths of an ounce (approximately 5.31 grams) of cocaine base.

Defendant admits that on September 7, 2006, defendant had a telephone conversation with a co-conspirator in which they discussed the sale and distribution of one sixteenth of an ounce (approximately 1.77 grams) of cocaine base.

Defendant admits that on September 7, 2006, defendant had an additional telephone conversation with a co-conspirator in which they discussed the sale and distribution of one sixteenth of an ounce (approximately 1.77 grams) of cocaine base.

Defendant admits that on September 21, 2006, defendant had a telephone conversation with a co-conspirator in which they discussed the sale and distribution of two sixteenths of an ounce (approximately 3.54 grams) of cocaine base.

Defendant admits that on September 30, 2006, defendant had a telephone conversation with a co-conspirator in which they discussed the sale and distribution of one sixteenth of an ounce (approximately 1.77 grams) of cocaine base.

     Defendant admits that on October 6, 2006, defendant had a telephone conversation with a co-conspirator in which they discussed the sale and distribution of three sixteenths of an ounce (approximately 5.31 grams) of cocaine base.

     Defendant admits that on October 7, 2006, defendant had a telephone conversation with a co-conspirator in which they discussed the sale and distribution of one sixteenth of an ounce (approximately 1.77 grams) of cocaine base.

     Defendant admits that on October 8, 2006, defendant had a telephone conversation with a co-conspirator in which they discussed the sale and distribution of one sixteenth of an ounce (approximately 1.77 grams) of cocaine base.

     Defendant admits that on October 10, 2006, defendant had a telephone conversation with a co-conspirator in which they discussed the sale and distribution of three sixteenths of an ounce (approximately 5.31 grams) of cocaine base.

     Defendant admits that on October 20, 2006, defendant had a telephone conversation with a co-conspirator in which they discussed the sale and distribution of six sixteenths of an ounce (approximately 10.62 grams) of cocaine base.

     Defendant admits that during his participation in the conspiracy, he conspired to distribute and possess with intent to distribute at least 50 grams of cocaine base, but less than 150 grams of cocaine base.

## WAIVER OF CONSTITUTIONAL RIGHTS

10.  By pleading guilty, defendant gives up the following rights:

    a) The right to persist in a plea of not guilty.

    b) The right to a speedy and public trial by jury.

    c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial. (In this regard, defendant understands that, despite his plea of guilty, he retains the right to be represented by counsel -- and, if necessary, to have the court appoint counsel if defendant cannot afford counsel -- at every other stage of the proceeding.)

      d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e) The right to confront and cross-examine witnesses against defendant.

      f) The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

      g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

  By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF DNA TESTING

  11.  Defendant has been advised that the government has in its possession the following items of physical evidence that could potentially be subjected to DNA testing: cocaine base and packaging, letters, miscellaneous papers and documents, money and .380 caliber ammunition all seized from 806 S. Townsend Street, Apartment #4, Santa Ana, California on November 2, 2006. Defendant understands that the government does not intend to conduct DNA testing of any of these items.  Defendant understands that, before entering a guilty plea pursuant to this agreement, defendant could request DNA testing of evidence in this case. Defendant further understands that, with respect to the offense

7

to which defendant is pleading guilty pursuant to this agreement, defendant would have the right to request DNA testing of evidence after conviction under the conditions specified in 18 U.S.C. § 3600.  Knowing and understanding defendant's right to request DNA testing, defendant voluntarily gives up that right with respect to both the specific items listed above and any other items of evidence there may be in this case that might be amenable to DNA testing.  Defendant understands and acknowledges that by giving up this right, defendant is giving up any ability to request DNA testing of evidence in this case in the current proceeding, in any proceeding after conviction under 18 U.S.C. § 3600, and in any other proceeding of any type.  Defendant further understands and acknowledges that by giving up this right, defendant will never have another opportunity to have the evidence in this case, whether or not listed above, submitted for DNA testing, or to employ the results of DNA testing to support a claim that defendant is innocent of the offense to which defendant is pleading guilty.

SENTENCING FACTORS

12.  Defendant understands that the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence and sentencing range established under the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), in determining defendant's sentence. Defendant further understands that the Sentencing Guidelines are advisory only, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court may be free to exercise its discretion to impose any reasonable sentence up

to the maximum set by statute for the crime of conviction.

13. Defendant and the USAO agree and stipulate to the following applicable Sentencing Guidelines factors:

| | | | |
|---|---|---|---|
| Base Offense Level | : | 32 | [U.S.S.G. § 2D1.1(c)(4)] |
| Specific Offense Characteristics (specify) | : | +3 | [U.S.S.G. § 3B1.1(b)] |
| Adjustments (specify) | : | -2 | Booker Variance |
| | : | -3 | [U.S.S.G. § 3E1.1] |

The calculations are made pursuant to the November 1, 2006 Sentencing Guidelines. If the court determines that the November 1, 2007 Sentencing Guidelines apply retroactively, specifically the amendments lowering the penalties for cocaine base offenses, then the parties agree that the 2 level Booker Variance departure as indicated above is not applicable. Defendant and the USAO agree that no additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. Defendant also understands that defendant's base offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2. In the event that defendant's offense level is so altered, the parties are not bound by the base offense level stipulated to above.

14. There is no agreement as to defendant's criminal history or criminal history category.

15. Defendant, pursuant to the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7), further reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines.

16. The stipulations in this agreement do not bind either the United States Probation Office or the Court. Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.

## DEFENDANT'S OBLIGATIONS

17. Defendant agrees that he will:

   a) Plead guilty as set forth in this agreement.

   b) Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

   c) Not knowingly and willfully fail to: (i) appear for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

   d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

   e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

   f) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay.

## THE USAO'S OBLIGATIONS

18. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

   a) To abide by all sentencing stipulations contained in this agreement.

   b) At the time of sentencing to move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider the dismissed counts in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range.

   c) Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not to further prosecute defendant for violations of 8 U.S.C. § 1326 arising out of the defendant, who is an illegal alien, meaning not a natural-born or naturalized citizen, voluntarily reentering the United States after lawful deportation without the permission of the Attorney General or his designated successor, the Secretary of the Department of Homeland Security, or any authorized representative of either the Attorney General or that Department.  Defendant understands that the USAO is free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from

11

that range, and the determination of the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors.

d) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary, move for an additional one-level reduction if available under that section.

e)  To recommend that defendant be sentenced to a term of imprisonment at the low end of the applicable Sentencing Guidelines imprisonment range provided that the total offense level as calculated by the Court is 30 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines imprisonment range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

## BREACH OF AGREEMENT

19.  If defendant, at any time after the execution of this agreement, knowingly violates or fails to perform any of defendant's agreements or obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  If the USAO declares this agreement breached at any time following its execution, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all of its obligations under this

agreement.

20. Following the Court's finding of a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

    a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

    b) Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

    c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the stipulated factual basis statement in this agreement; and (iii) any evidence derived from such statements, are admissible against defendant in any such prosecution of defendant, and defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

<u>LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

21. Defendant gives up the right to appeal any sentence imposed by the Court, and the manner in which the sentence is

determined, provided that (a) the sentence is within the statutory maximum specified above and is constitutional, and (b) the Court imposes a sentence within or below the range corresponding to a total offense level of 30, and the applicable criminal history category as determined by the Court. Notwithstanding the foregoing, defendant retains any ability defendant has to appeal the Court's determination of defendant's criminal history category and the conditions of supervised release imposed by the Court, with the exception of the following: conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

22. The USAO gives up its right to appeal the sentence, provided that (a) the sentence is within the statutory minimum and maximum specified above and is constitutional, and (b) the Court imposes a sentence within or above the range corresponding to a total offense level of 30, and the applicable criminal history category as determined by the Court.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

23. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining counts of conviction, with both the USAO and defendant being released from all of their

obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

## COURT NOT A PARTY

24. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

25. Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

26. The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

GEORGE S. CARDONA
United States Attorney

/s/ _____     9/9/07
TERRI K. FLYNN                   Date
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises or inducements have been given to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

/s/ _____     9/5/07
JUAN VERDIN                      Date
Defendant

16

I am JUAN VERDIN's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

*/s/ Kelley Lane Munoz*          9-5-07
KELLEY LANE MUNOZ              Date
Counsel for Defendant
JUAN VERDIN

17